UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| FAROULH DORLETTE,<br>    Plaintiff,<br><br>v.<br><br>SCOTT S. SEMPLE, et al.,<br>    Defendants. | :<br>:<br>:   PRISONER<br>:   Civil No. 3:15cv1200(VLB)<br>:<br>:<br>: |

## RULING AND ORDER

The plaintiff, Faroulh Dorlette, is currently incarcerated at Northern Correctional Institution ("Northern") in Somers, Connecticut. He initiated this action by filing a civil rights complaint against Commissioner Scott Semple, former Commissioners of Correction James Dzurenda and Leo Arnone, Director of Security C.M. Whidden, District Administrator John Doe 1, and Director of Classification and Population Management John Doe 2. Pending before the court is the plaintiff's motion seeking injunctive relief. For the reasons set forth below, the motion will be denied.

I.     <u>Motion for Emergency Preliminary Injunction [ECF No. 61]</u>

On August 22, 2016, the plaintiff filed an *ex parte* motion seeking a preliminary injunction enjoining his security group designation and housing in segregation. On September 7, 2016, the plaintiff informed the Clerk that he had been transferred to a prison facility in Vermont. *See* Notice, ECF No. 26.

On October 26, 2016, after providing the Department of Correction with notice of the plaintiff's motion, the court held a hearing to address the motion's

request for relief. Assistant Attorney General Terrence M. O'Neill appeared for the Department of Correction and the plaintiff appeared for himself. After the hearing, the court denied the motion seeking injunctive relief as moot because, the evidence adduced at the hearing revealed that pursuant to a 2014 settlement agreement between the Connecticut Department of Correction and the plaintiff, Department of Correction officials had transferred the plaintiff to a prison facility in Vermont and prison officials in Vermont had assigned the plaintiff to a minimum security classification. *See* Mem. Order, ECF No. 39. The court also concluded that the plaintiff's future housing under a Security Risk Group designation was not likely to be capable of repetition. *See id.* The court noted that the plaintiff could renew his motion if became incarcerated in a Connecticut prison facility in the future as a Security Risk Group Member. *See id.*

Seven months after the hearing, on May 12, 2017, the plaintiff filed a notice of a change of address dated May 10, 2017, indicating that he had been transferred back to Connecticut and was confined at Corrigan-Radgowski Correctional Institution ("Corrigan"). *See* ECF No. 52. On that same date, the plaintiff filed an *ex parte* motion seeking to reopen the case and to have the court revisit his previous motion for injunctive relief. On June 5, 2017, the court permitted the plaintiff to renew his motion for injunctive relief. He filed an *ex parte* motion for injunctive relief on July 12, 2017. The court denied the motion without prejudice because the plaintiff had filed it *ex parte*. On September 5, 2017, the plaintiff filed the same motion seeking injunctive relief, but did not

include "ex parte" in the designation on page one of the motion. That motion is currently pending before the court.

In his motion, Plaintiff claims that he "has been segregated from the general inmate population illegally for the past ten (10) years, in harsh conditions of confinement and without any or meaningful periodic review to return to the general inmate population." [Dkt. No. 61-1 at 1]. He claims to have been in segregation since August 23, 2006 because he is classified as a gang member although he is "not an active member of a gang." *Id.* at 4. Plaintiff claims he is suffering irreparable harm as evidenced by his current and past hunger strikes in protest of his designation, the permanent physical harm which a hunger strike can cause, and restrictions on his rights of association, exercise of religion, and liberty.

A. <u>Standard of Review</u>

Preliminary injunctive relief "is an 'extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted). To warrant preliminary injunctive relief, the moving party must demonstrate (a) that he or she will suffer "irreparable harm" in the absence of an injunction, and (b) either (1) a "likelihood of success on the merits or (2) sufficiently serious questions going to the merits [of the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary injunctive

relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011) (internal quotation marks omitted).

Inmates do not forfeit all of their constitutional rights at the prison gates. *Wolff* v. *McDonnell,* 418 U.S. 539, 555(1963). That having been said, they do forfeit many rights enjoyed by lawful individuals. "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Jones* v. *North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125 (1977) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). It is expected that prison officials will discipline inmates to encourage compliant and discourage deviant behavior, and thus discipline is an expected and usual condition of prison confinement. *Price*, 334 U.S. at 285. Administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration, particularly where warranted to assure prison safety. *Hewitt v. Helms,* 459 U.S. 460, 473 (1993). Prison security is jeopardized by prison gangs. *Wilkinson v. Austin,* 545 U.S. 209, 213 (2005). It is wholly permissible to impose discipline to assure that gang culture and warfare do not pose a risk to the safety of prison inmates and staff.

A hearing is generally required on a properly supported motion for preliminary injunction if material facts are in dispute. *See Kern v. Clark,* 331 F.3d 9, 12 (2d Cir. 2003) ("the existence of factual disputes necessitates an evidentiary hearing . . . before a motion for preliminary injunction may be decided.") (internal

quotation marks and citation omitted). "[W]hen the relevant facts either are not in dispute or have been clearly demonstrated at prior stages of the case . . . or when the disputed facts are amenable to complete resolution on a paper record," a hearing is not required to resolve a motion for preliminary injunction. *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) (citations omitted). The court concludes that that the motion seeking injunctive relief may be resolved without a hearing.

    B.    <u>Discussion</u>

The plaintiff has designated his motion as a motion seeking preliminary injunctive relief. He requests a court order directing the defendants to release him from segregation and transfer him to general population. In support of his motion, the plaintiff has filed a document designated as "Supplemental Information Provided in Ex Parte." *See* ECF No. 62. This document is not signed by the plaintiff. Rule 11 of the Federal Rules of Civil Procedure requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." Because the document designated "Supplemental Information" is unsigned and does not comply with Rule 11, and the court has previously directed the plaintiff not to file his requests for injunctive relief *ex parte*, the court does not consider the "Supplemental Information" in deciding the motion seeking injunctive relief.

Plaintiff claims that he is irreparably injuring himself by engaging in a hunger strike. He states that he is protesting the harmful conditions of confinement in segregation. He asserts that he has engaged in hunger strikes and also tried to harm or kill himself by swallowing razor blades in the past. He contends that he could suffer kidney and liver damage or death as a result of the hunger strike.

The plaintiff has voluntarily engaged in a hunger strike. He claims that he is refusing to eat because he is depressed by his conditions of confinement, however, he does not allege that he has sought treatment for his depression or that treatment was unavailing. He does acknowledge that he has engaged in hunger strikes in the past and has taken other steps to harm himself, all of which have been abated. This suggests that he has the ability not to harm himself or that treatment has enabled him to stop harming himself.[1] He does not allege that the hunger strike has caused harm to his health. Instead, he states that the hunger strike might cause damage to his liver or kidneys, rendering his claim wholly speculative. Whether he decides to end the hunger strike on his own or accept treatment for his depression so that he will not be inclined towards self-

---

[1] The court notes that in response to hunger strikes by the plaintiff in 2013, 2014 and 2016, the Department of Correction has initiated actions in state court to enjoin the plaintiff from interfering with his treatment by Department of Correction health staff, including hospitalization, intravenous fluids and/or nourishment, nasogastric feeding and other healthcare measures necessary to preserve his life or health. *See Semple v. Dorlette*, Case No. HHD-CV16-6070450-S (Conn. Super. Ct. Aug. 10, 2016) (Compl., Dkt. Entry 100.31 filed August 10, 2016). These prior state court actions suggest that the Department of Correction has and will continue to monitor the plaintiff's health in connection with the

harm is a decision within his control.  The court concludes that the plaintiff has not alleged that he is in danger of imminent harm as a result of actions of the defendants.  Rather the plaintiff has subjected himself to a condition which he describes as only potentially harmful to his health.  The motion for injunctive relief is denied.

The plaintiff states that he has been designated as a Security Risk Group Member but is not an active member of any gang and that he has been deprived of any or meaningful review of his classification.  He complains that he has been deprived of procedural due process because he "has not received meaningful periodic reviews" of his classification as a member of a security risk group.  The plaintiff does not address the fact that he had only been returned to a Connecticut prison facility as of May 2017, when he initially sought leave to file a new motion for injunctive relief.   Furthermore, upon his return to Connecticut from Vermont, the plaintiff was confined at Corrigan, not Northern.  The plaintiff does not explain when or how Connecticut prison officials made the determination to re-classify him as a Security Risk Group Member and to transfer him to Northern.

State of Connecticut Department of Correction Administrative Directive 6.14 provides that prison officials are required to hold a periodic review of "any inmate's designation as a Security Risk Group Member as new information arises, or at least every six (6) months, to determine whether the inmate should

---

alleged current hunger strike.

remain on this status." *See* State of Connecticut Department of Correction Administrative Directive 6.14(9) (Six (6) Month Review of Security Risk Group Member Designation), available at www.ct.gov/dos/LIB/doc/PDF/AD/ad0614.pdf. Once again, plaintiff makes a patently false claim. At the time the plaintiff filed his motions for injunctive relief, he had not been confined at Northern as a Security Risk Group Member for six months. Thus, contrary to his claim, plaintiff is afforded regular periodic review of his status. In addition, the applicable regulations afford him more frequent reviews where circumstances warrant such an interim review. Plaintiff does not allege that a change in circumstances warranting a review occurred. The only possible circumstance would be his hunger strike, a circumstance of his own making. Thus, the court concludes that the DOC directives provide reasonable reviews of an inmate's status, that plaintiff does not credibly allege that that he was denied a review, and further that plaintiff has not alleged that he will suffer imminent harm because of the acts or omissions of any defendant if his request for injunctive relief, based on his claimed denial of periodic reviews, is not granted.

Even if plaintiff had alleged sufficient facts to raise a genuine issue of irreparable injury he is unlikely to prevail on the merits and the facts alleged do not raise sufficient facts going to the merits or tip the hardships in his favor. Plaintiff claims that he was deprived of his liberty rights by virtue of the length of time he has been confined in a segregated unit based on his gang affiliation classification. An inmate is entitled to freedom from restraint that "imposes

atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

As indicated above, Plaintiff was transferred from Connecticut, where he was segregated in a restricted housing unit, to Vermont on September 7, 2016 where he was housed in general population. Vermont transferred the plaintiff back to Connecticut at some point prior to May 10, 2017, approximately eight months later. Connecticut prison officials confined the plaintiff at Corrigan until some point between May 10, 2017 and July 12, 2017, when he filed the *ex parte* motion seeking injunctive relief from being housed in a restrictive unit, [ECF No. 58], after which prison officials in Connecticut transferred the plaintiff from Corrigan to Northern. Thus Plaintiff has not been housed in segregation continuously for ten years as he claims. He was housed in general population from approximately September 2006 to July 2007. His confinement in segregation has been intermittent.

Further, in determining whether confinement constitutes an atypical and significant hardship courts must consider not only the duration of the confinement, but also the reason for the confinement. *Id.* Applying that standard, 270 days of disciplinary confinement in New York SHU was held not to constitute an atypical and significant hardship" under *Sandin*. *See Carter v. Carriero*, 905 F. Supp. 99, 104 (W.D.N.Y. 1995). However, in *Lee v. Coughlin*, 902 F. Supp. 424 (S.D.N.Y. 1995), the Court found that 376 days of punitive confinement in the SHU imposed an "atypical and significant hardship" for an

9

inmate serving a two-year sentence.  Plaintiff fails to assert sufficient facts to raise a genuine issue of a fact that his confinement has posed a substantial and atypical hardship based on the length of time he has been confined in a restrictive housing unit and the facts he has asserted suggest that he has not suffered a hardship on that basis alone.

The plaintiff complains about the conditions of confinement at Northern and the lack of periodic reviews.  The plaintiff states that the Department of Correction permits an inmate designated as Security Risk Group Member to participate in visitation, but only with immediate family members.  The plaintiff claims that he does not have any immediate family members.  The plaintiff also states that he is a Muslim.  He contends that prison officials have denied him participation in congregate religious services, such as Ju'Mah.  However, the plaintiff has not alleged that the conditions at Northern, denial of visitation with individuals who are not immediate members of his family or denial of participation in Muslim group prayer have caused him to suffer irreparable harm or will cause him to suffer irreparable harm.  He concedes that he may contact non-immediate family members by telephone and in writing.  The fact that prison officials might sanction him with loss of telephone or mail privileges if he were to be found guilty of a disciplinary infraction in the future is speculative at best.  Nor does the plaintiff state that he is unable to pray in his cell.

### C. Conclusion

The court has determined that the conditions of confinement described by the plaintiff in his motion seeking injunctive relief do not and will not subject him to irreparable or imminent harm. Absent any allegations of irreparable injury, the plaintiff fails to satisfy the first requirement for the issuance of injunctive relief. Because there is no showing of irreparable harm, the court need not examine the other requirements for the issuance of injunctive relief. *See Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) ("The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered.") (internal quotation marks, modifications, and citations omitted). Notwithstanding this failure, to show irreparable injury, the court has considered the merits of plaintiff's claims and find them lacking. Accordingly, the motion for injunctive relief is denied.

### II. Payment of Filing Fee

When the plaintiff filed this action, he sought leave to proceed *in forma pauperis*. On September 1, 2016, the court granted the plaintiff leave to proceed *in forma pauperis*. [*See* ECF No. 23]. On November 1, 2016, the court discovered additional facts and on that basis vacated its prior order granting the plaintiff leave to proceed *in forma pauperis* in this action and ordered the plaintiff to pay the filing fee within twenty-one days. The court cautioned the plaintiff that the case would be dismissed with prejudice if the fee was not received by the Clerk

within the time specified. On November 14, 2016, the plaintiff filed a notice to appeal the order vacating the order granting the application to proceed *in forma pauperis*.

On March 13, 2017, the United States Court of Appeals for the Second Circuit issued a Mandate dismissing the plaintiff's appeal. In it the Second Circuit court of Appeals stated: the appeal is dismissed effective February 7, 2017 unless by that date appellant either pays the fee in full, moves for *in forma pauperis* status in district court or, if district court has denied *in forma pauperis* status, moves in this Court for *in forma pauperis* status. If appellant has filed the motion in district court and the motion is pending, appellant must so advise this Court in writing by the same date." To date, plaintiff has not tendered the filing fee. Accordingly, this action will be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with a court order directing the plaintiff to submit the filing fee, [ECF No. 43]. Just as plaintiff failed to comply with this court's order, as of this date, fully six months after the date of the Mandate, plaintiff has also failed to comply with the order of the court of appeals.

## ORDERS

The Motion for Preliminary Injunction [ECF No. 61] is DENIED. This action is DISMISSED with prejudice pursuant to Federal Rule of Civil Procedure 41(b) for the plaintiff's failure to comply with a court order, [ECF No. 43], directing him to submit the filing fee on or before November 22, 2016.

**So ordered at Hartford, Connecticut.**

                                             ___**/s/**_____
                                             **Vanessa L. Bryant**
                                             **United States District Judge**